OPINION
Appellant April Mounts Ellis appeals the Judgment Entry of the Coshocton County Court of Common, Juvenile Division, terminating her parental rights and granting appellee Coshocton County Children Services Board ("CCCSB") permanent custody of her minor son.
 STATEMENT OF THE FACTS AND CASE
Appellant is the natural mother of Ross Wayne Wright (DOB 6/1/94). Within two months of his birth CCCSB began receiving reports that appellant was abusing alcohol and repeatedly leaving the child in the care of friends, family, and babysitters for extended periods of time. Consequently, Ross was placed in foster care with Mr. and Mrs. Paul Miller on June 14, 1995. Thereafter, on December 28, 1995, the trial court found Ross to be a dependent child as defined under R.C. 2151.04.
Appellant, who is now twenty-two years old, began drinking at the age of thirteen or fourteen. By the time she was sixteen years old, appellant was abusing alcohol. At age eighteen, appellant gave birth to Alley Harper, but lost custody of the child to Betty Shutt, Alley's paternal grandmother.
Appellant's abuse of alcohol resulted in her having repeated involvement with law enforcement, including convictions for DUI, driving under suspension, theft, and other charges. On April 24, 1995, appellant was arrested for underage consumption. In May, 1995, appellant, who was on probation for another offense, was sentenced to serve eighty (80) days in the county jail. Subsequently, on August 30, 1995, appellant was transported to the Ohio Reformatory for Women in Marysville, Ohio. In November, 1995, the trial court granted appellant shock probation. Within twenty-four hours of her release from prison, appellant's probation was revoked due to her abuse of alcohol and she was ordered to serve the balance of her sentence. Appellant was released from prison on May 3, 1996.
While incarcerated, appellant completed drug and alcohol treatment, parenting classes, and domestic violence education. In addition, appellant obtained her GED. Appellant claims she has been sober since her return to prison in November, 1995.
Lisa Cabot, a social worker with the CCCSB, met with appellant on May 7, 1996. Although appellant was released from prison on May 3, 1996, she remained in Columbus, Ohio, until May 7, 1996. When Cabot met with appellant, appellant's neck bore signs of the man appellant had met and stayed with while she was in Columbus.
On May 9, 1996, CCCSB arranged an appointment for appellant with Kno-Ho-Co in order to obtain housing. CCCSB also transported appellant to different places in order to fill out applications. On the next day, appellant missed an appointment with Six Counties, a counseling center. Appellant also missed an appointment with Kno-Ho-Co.
At the end of May, 1996, appellant moved in with a friend. On two occasions, Cabot observed beer cans in the trash can of the residence. Appellant denied drinking at those points. Thereafter, Cabot made an unannounced visit to a trailer where appellant was staying. As the social worker walked toward the trailer, she thought she heard appellant's voice. Upon knocking on the door, Dave Ellis, appellant's then-boyfriend, answered. Ellis, who was intoxicated, informed Cabot that appellant was in Cambridge visiting her sister. Cabot observed numerous beer cans strewn about the trailer. Cabot left the residence and began to drive away, however, she returned moments later. As she looked into the open door of the trailer, Cabot saw appellant. When Cabot asked appellant to speak with her outside, appellant went into the back of the trailer. Eventually, appellant exited the trailer and talked to Cabot.
On June 17, 1996, appellant began a day treatment program, however, her attendance during the first three weeks was so sporadic, she was eventually terminated. In July, 1996, appellant advised Jan Kobel, her alcohol counselor, she stopped attending the day treatment program because she had moved to Cambridge, Ohio, where she staying with her sister. Appellant explained that she moved in with her sister because the woman, with whom she was living in Coshocton, was drinking and appellant was concerned she might relapse if she continued to live there.
On July 26, 1996, CCCSB designed a new case plan for appellant to accommodate her change of circumstances. In September, 1996, appellant advised her alcohol counselor that she and her boyfriend were moving to Columbus in order to find employment. Appellant did not contact the counselor until October 24, 1996. At that meeting, appellant indicated that she was living in Newark, Ohio, and planned to go to the Licking Alcohol Prevention Program for an assessment, planned to attend AA meetings, and intended to apply for a job at Meijer's. Appellant stated that she had not used alcohol since November, 1995.
During the months of July, August, and September, 1996, appellant improved her attendance at AA meetings and scheduled visitation with Ross. However, appellant failed to attend any appointments with her alcohol counselor during the months of November and December, 1996, and January, 1997. During this time, her visitations with Ross became increasingly sporadic. In fact, appellant attended only slightly more than half of the twenty-five scheduled visits. Appellant explained the missed appointments were due to a lack of transportation from Newark to Coshocton. Dr. John Conley, a clinical psychologist, observed Ross on two occasions, one time with his foster parents and the second time with appellant. He also administered testing materials to appellant, which included a behavior checklist and a parenting inventory. After evaluating appellant, Dr. Conley determined that she needed consistent, long term therapy as well as community support in the form of continued supervision of her parent/child relationship.
In his report, James Deam, the guardian ad litem for Ross, stated, although appellant had begun to address her alcoholism, "[a]lcohol will always be an issue for [appellant] which will require some continued AA attendance or other support system for her to continue her sobriety." Deam continued, "One does not resolve ten years of alcoholism and the ravages of abuse in eighteen months." Although the guardian acknowledged appellant and Ross have not had the opportunity to develop a mother/son relationship as a result of the different incidents over the past three years, he opined the lack of bonding between the two could never be replaced. Deam concluded it is in the child's best interest that CCCSB be granted permanent custody despite appellant's recent recognition of her chemical dependency and strides to improve her life.
On January 3, 1997, CCCSB filed a motion to modify temporary custody to permanent custody because appellant and Wayne Wright, the biological father,[1] had not made sufficient progress towards reunification to establish a safe and stable home for the child. The matter came on for hearing on April 18, 1997, May 8, 1997, and June 3, 1997.
Based upon the record, the testimony of the witnesses and parties at the hearing on CCCSB's motion for permanent custody, and the report and recommendations of the guardian ad litem, the trial court terminated appellant's parental rights and granted permanent custody of Ross Wayne Wright to CCCSB. The trial court memorialized its decision in a Judgment Entry dated July 17, 1997.
It is from this Judgment Entry appellant prosecutes this appeal raising as her sole assignment of error:
 THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO THE COSHOCTON COUNTY CHILDREN SERVICES BOARD AND DIVESTING THE MOTHER OF ALL PARENTAL RIGHTS.
Herein, appellant contends the judgment terminating her parental rights and granting permanent custody of her son to CCCSB was against the manifest weight of the evidence.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
The relevant statute is R.C. 2151.414. The statute provides, in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
In determining the best interest of a child, R.C. 2151.414(D) states:
 (D) . . . the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
James Deam, the guardian ad litem, reported, and also testified at the hearing, that Ross had bonded with his foster parents, and they with him, during the two years the child had been in the Miller's care. Deam explained Ross views the Millers as his parents and is attached to them. The guardian could not recommend that the child be reunified with appellant "due to the trauma that he would experience if he were removed from the Miller foster home." The guardian further explained the lack of bonding between appellant and Ross during the first three years of his life could not be replaced.
We find the trial court's finding it was in Ross' best interest to grant permanent custody to CCCSB is not against the manifest weight of the evidence.
However, a best interest determination is not sufficient to grant permanent custody of a child to an agency and divest parents of their parental rights. In the instant case, the trial court further found that Ross could not be placed with appellant or his father within a reasonable time or should not be placed with either parent.
The record reveals, although appellant has a chemical dependency and acknowledges such dependency, she continuously and repeatedly failed, for a period of over six months, to substantially remedy the conditions causing Ross to be removed from her home.
In light of the foregoing, we find the trial court's finding that Ross could not be placed with appellant within a reasonable time or should not be placed with appellant is not against the manifest weight of the evidence.
Appellant's sole assignment of error is overruled.
The judgment of the Coshocton County Court of Common Pleas, Juvenile Division, is affirmed.
By: Hoffman, J., Gwin, P.J. and Reader, J. concur.
 JUDGMENT ENTRY
CASE NO. 97CA17
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Coshocton County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] Wayne Wright is not a party to this appeal.